# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# Civil Action No. 3:17-cv-00412-RJC-DSC

**NATHAN BURRIS,**

                         **Plaintiff,**

    v.

**FXI, INC.,**

                         **Defendant.**

## MEMORANDUM AND RECOMMENDATION AND ORDER

**THIS MATTER** is before the Court on "Defendant Motion to Dismiss …" (document #6) and the parties' briefs and exhibits.

This matter has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1) and this Motion is now ripe for the Court's consideration.

Having fully considered the arguments, the record, and the applicable authority, the undersigned respectfully recommends that Defendant's Motion to Dismiss be <u>granted</u>, as discussed below.

### I. FACTUAL AND PROCEDURAL BACKGROUND

Accepting the factual allegations of the Complaint as true, Customer Driven Staffing ("CDS"), a temporary employment agency, hired Plaintiff on August 19, 2014. Plaintiff's contract with CDS provided "for the period beginning on the date of this agreement and ending 12 months from the termination date of employment [Plaintiff] will not directly seek employment with any Client companies or employment agencies who service a CDS client that I was assigned to while employed through CDS (without CDS written consent)." On June 11, 2015, CDS sent Plaintiff to work at Defendant's facility in Cornelius, North Carolina.

CDS provided temporary staffing services to Defendant pursuant to a contract executed June 10, 2011. The contract provided that CDS would "be responsible for providing any salary or other employment related benefits to its Contract Employees." The contract further provided that Defendant "shall not directly or indirectly hire any Contract Employee provided by Contractor until Contract Employee has completed a minimum of ninety (90) days of service with Contractor at Company location."

On July 27, 2015 Plaintiff suffered a workplace injury to his right hand.

As a result of his injuries, Plaintiff filed a claim against CDS and its insurer, Synergy Insurance Company, with the North Carolina Industrial Commission. See Nathan Burris, Employee-Plaintiff, v. CD Staffing, Inc., Employer-Defendant, and Synergy Insurance Company, Carrier-Defendant, I. C. No. 15-042116. Plaintiff's claim was accepted as a compensable injury that occurred in the course and scope of his employment. Subsequently, those parties entered into a final settlement.

On July 14, 2017, Plaintiff filed this lawsuit, asserting a negligence claim against Defendant. He is seeking damages for the same injuries that were the subject of his workers' compensation claim.

On August 4, 2017, Defendant moved to dismiss, arguing that the exclusivity provisions of the North Carolina Workers' Compensation Act bar this action.

Defendant's Motion to Dismiss has been fully briefed and is ripe for determination.

## II. DISCUSSION

In reviewing a Rule 12(b)(6) motion, "the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff." Mylan Labs., Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993). The plaintiff's "[f]actual allegations must be

enough to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Id. at 563. A complaint attacked by a Rule 12(b)(6) motion to dismiss will survive if it contains enough facts to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

In Iqbal, the Supreme Court articulated a two-step process for determining whether a complaint meets this plausibility standard. First, the court identifies allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Id. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555) (allegation that government officials adopted challenged policy "because of" its adverse effects on protected group was conclusory and not assumed to be true). Although the pleading requirements stated in "Rule 8 [of the Federal Rules of Civil Procedure] mark[] a notable and generous departure from the hyper-technical, code-pleading regime of a prior era ... it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." Id. at 678-79.

Second, to the extent there are well-pleaded factual allegations, the court should assume their truth and then determine whether they plausibly give rise to an entitlement to relief. Id. at 679. "Determining whether a complaint contains sufficient facts to state a plausible claim for relief "will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id.. "Where the well-pleaded facts do not permit the court to

infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief,'" and therefore should be dismissed. Id. (quoting Fed. R. Civ. P. 8(a)(2)).

It is well established under North Carolina workers' compensation law that a temporary employee is generally an employee of both (1) his general employer or temporary employment agency and (2) his special employer where he was assigned to work. Brown v. Friday Services, Inc., 460 S.E.2d 356, 360-361 (N.C. App. 1995) (noting that a majority of jurisdictions hold that a temporary employee is an employee of both the temporary agency and the temporary employer, making workers' compensation the employee's exclusive remedy for workplace injuries suffered during a temporary employment assignment); see also Freeman v. SONA BLW Precision Forge, Inc., 784 S.E.2d 237 (N.C. App. Mar. 15, 2016) (unpublished decision); Bullard v. Peak Steel, LLC, 781 S.E.2d 532 (N.C. App. Jan. 5, 2016) (unpublished decision). This principle is known as the "special employment doctrine." It applies even when the temporary employment agency and its insurance carrier are the only entities responsible for the plaintiff's workers' compensation benefits and/or are the only entities that actually paid the benefits. Poe v. Atlas-Soundelier/American Trading & Production Corp., 512 S.E.2d 760, 763-764 (N.C. App. 1999); Brown, 460 S.E.2d at 360-361.

The special employment doctrine applies when the following conditions are satisfied: (1) the temporary employee made a contract of hire, express or implied, with the special employer, (2) the work being done was essentially that of the special employer, and (3) the special employer had the right to control the details of the temporary employee's work. See, e.g., Freeman, 784 S.E.2d 237 *4-5; Bullard, 781 S.E.2d 532 *5-6. In his Memorandum in Response, Plaintiff "concedes that the work he performed was essentially that of FXI, and that FXI had the right to

control the details of that work." Document #12 at 2.  The parties agree that there was no express contract between Plaintiff and Defendant to satisfy the first element. See Defendant's Reply at 1. (document #13).  Accordingly, the only issue here is whether there was an implied contract between Plaintiff and Defendant.

Plaintiff argues that his contract with CDS as well as the one between CDS and Defendant expressly preclude the finding of an implied contract.  Id. at 5.  "An implied contract exists between the employee and the special employer where the employee 'accept[s] the assignment from [the temporary employment agency] and perform[s] the work at the direction and under the supervision of [the special employer].'" See, e.g., Freeman, 784 S.E.2d 237 *3 (citing Brown, 460 S.E.2d at 360).  Implied contracts between employees and special employers also have been "demonstrated by an express contract between the temporary employment agency and the special employer under which the special employer paid the temporary employment agency which in turn paid the employee for his work." Id. (citing Brown, 460 S.E.2d at 360-61 and Henderson v. Manpower of Guilford Cty., Inc., 319 S.E.2d 690, 694 (N.C. App. 1984)).

Applying those principles to the factual allegations here, Defendant has established that it is Plaintiff's special employer for workers' compensation exclusivity purposes. Plaintiff accepted the assignment from CDS and worked at the direction and under the supervision of Defendant. The contract between Defendant and CDS provided that Defendant would pay CDS for Plaintiff's services and CDS would in turn pay Plaintiff.

Plaintiff's reliance on temporal restrictions contained in the contracts between himself and CDS and CDS and Defendant is misplaced.  In Freeman and Bullard, the North Carolina Court of Appeals rejected an identical argument.  Freeman, 784 S.E.2d 237 *4; Bullard, 781 S.E.2d 532 *5-6.  Neither contract expressly retains Plaintiff as solely an employee of CDS.  Rather, the contracts

protect CDS' investment in its employees. These contracts merely contain conditions precedent to Defendant becoming Plaintiff's general employer. They do not prevent Defendant from being Plaintiff's special employer for workers' compensation purposes. Id.

Accordingly, the undersigned respectfully recommends that Defendant's Motion to Dismiss be granted.

### III. ORDER

**IT IS HEREBY ORDERED** that all further proceedings in this action, including all discovery, are **STAYED** pending the District Judge's ruling on this Memorandum and Recommendation and Order.

### IV. RECOMMENDATION

**FOR THE FOREGOING REASONS,** the undersigned respectfully recommends that "Defendant Motion to Dismiss …" (document #6) be **GRANTED**.

### V. NOTICE OF APPEAL RIGHTS

The parties are hereby advised that, pursuant to 28 U.S.C. §636(b)(1)(c), written objections to the proposed findings of fact and conclusions of law and the recommendation contained in this Memorandum must be filed within fourteen (14) days after service of same. Failure to file objections to this Memorandum with the Court constitutes a waiver of the right to de novo review by the District Judge. Diamond v. Colonial Life, 416 F.3d 310, 315-16 (4th Cir. 2005); Wells v. Shriners Hosp., 109 F.3d 198, 201 (4th Cir. 1997); Snyder v. Ridenour, 889 F.2d 1363, 1365 (4th Cir. 1989). Moreover, failure to file timely objections will also preclude the parties from raising such objections on appeal. Thomas v. Arn, 474 U.S. 140, 147 (1985); Diamond, 416 F.3d at 316; Page v. Lee, 337 F.3d 411, 416 n.3 (4th Cir. 2003); Wells, 109 F.3d at 201; Wright v. Collins, 766

F.2d 841, 845-46 (4th Cir. 1985); <u>United States v. Schronce</u>, 727 F.2d 91 (4th Cir. 1984).

The Clerk is directed to send copies of this Memorandum and Recommendation and Order to counsel for the parties; <u>and to the Honorable Robert J. Conrad, Jr.</u>

**SO ORDERED AND RECOMMENDED.**

Signed: October 12, 2017

David S. Cayer
United States Magistrate Judge