UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:17-cv-412-RJC-DSC

| NATHAN BURRIS, | ) |  |
|---|---|---|
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) |  |
| v. | ) |  |
|  | ) | **ORDER** |
| FXI, INC., | ) |  |
|  | ) |  |
| Defendant. | ) |  |

**THIS MATTER** comes before the Court on FXI, Inc.'s ("Defendant's") Motion to Dismiss, (Doc. No. 6); its Memorandum in Support, (Doc. No. 7); Nathan Burris' ("Plaintiff's") Memorandum in Opposition, (Doc. No. 12); Defendant's Reply, (Doc. No. 13); the Magistrate Judge's Memorandum and Recommendation ("M&R"), recommending the Court grant Defendant's Motion, (Doc. No. 14); Plaintiff's Objection to the M&R, (Doc. No. 15); and Defendant's Reply, (Doc. No. 16). Defendant's Motion is now ripe for the Courts consideration.

**I.  BACKGROUND**

No party has objected to the Magistrate Judge's statement of the factual and procedural background of this case. Therefore, the Court adopts the facts as set forth in the M&R as they are reprinted below.

Accepting the factual allegations of the Complaint as true, Customer Driven Staffing ("CDS"), a temporary employment agency, hired Plaintiff on August 19, 2014. Plaintiff's contract with CDS provided "for the period beginning on the date of this agreement and ending 12 months from the termination date of employment [Plaintiff] will not directly seek employment with any Client companies or employment agencies who service a CDS client that I was assigned to while

employed through CDS (without CDS written consent)." On June 11, 2015, CDS sent Plaintiff to work at Defendant's facility in Cornelius, North Carolina.

CDS provided temporary staffing services to Defendant pursuant to a contract executed June 10, 2011. The contract provided that CDS would "be responsible for providing any salary or other employment related benefits to its Contract Employees." The contract further provided that Defendant "shall not directly or indirectly hire any Contract Employee provided by Contractor until Contract Employee has completed a minimum of ninety (90) days of service with Contractor at Company location."

On July 27, 2015 Plaintiff suffered a workplace injury to his right hand.

As a result of his injuries, Plaintiff filed a claim against CDS and its insurer, Synergy Insurance Company, with the North Carolina Industrial Commission. See Nathan Burris, Employee-Plaintiff, v. CD Staffing, Inc., Employer-Defendant, and Synergy Insurance Company, Carrier-Defendant, I. C. No. 15-042116. Plaintiff's claim was accepted as a compensable injury that occurred in the course and scope of his employment. Subsequently, those parties entered into a final settlement.

On July 14, 2017, Plaintiff filed this lawsuit, asserting a negligence claim against Defendant. He is seeking damages for the same injuries that were the subject of his workers' compensation claim.

On August 4, 2017, Defendant moved to dismiss, arguing that the exclusivity provisions of the North Carolina Workers' Compensation Act bar this action.

Defendant's Motion to Dismiss has been fully briefed and is ripe for determination.

## II.  STANDARD OF REVIEW

A district court may assign dispositive pretrial matters, including motions to dismiss, to a

magistrate judge for "proposed findings of fact and recommendations." 28 U.S.C. § 636(b)(1)(A) & (B). The Federal Magistrate Act provides that a district court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." Id. § 636(b)(1)(C); Fed. R. Civ. P. 72(b)(3). However, "when objections to strictly legal issues are raised and no factual issues are challenged, de novo review of the record may be dispensed with." Orpiano v. Johnson, 687 F.2d 44, 47 (4th Cir. 1982). De novo review is also not required "when a party makes general or conclusory objections that do not direct the court to a specific error in the magistrate judge's proposed findings and recommendations." Id. Similarly, when no objection is filed, "a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310, 315 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72, advisory committee note).

A motion to dismiss under Rule 12(b)(1) seeks to dismiss a complaint for lack of subject matter jurisdiction. FED. R. CIV. P. 12(b)(1). The existence of subject matter jurisdiction is a threshold issue the court must address before considering the merits of the case. Jones v. Am. Postal Workers Union, 192 F.3d 417, 422 (4th Cir. 1999). "The subject matter jurisdiction of federal courts is limited and the federal courts may exercise only that jurisdiction which Congress has prescribed." Chris v. Tenet, 221 F.3d 648, 655 (4th Cir. 2000) (citing Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994)). Subject matter jurisdiction is so limited that federal "[c]ourts have an independent obligation to determine whether subject-matter jurisdiction exists, even when no party challenges it." Hertz Corp. v. Friend, 559 U.S. 77, 94 (2010) (internal citations omitted). "No party can waive the defect, or consent to [subject matter] jurisdiction. No court can ignore the defect; rather a court, noticing the defect, must raise the matter on its own."

Wisconsin Dep't of Corr. v. Schacht, 524 U.S. 381, 389 (1998) (internal citations omitted).[1]

## III. DISCUSSION

Defendant moves to dismiss Plaintiff's complaint, arguing that the Special Employment Doctrine bars Plaintiff from recovering from Defendant after a workplace injury when Plaintiff had already recovered for that injury from CDS. (Doc. No. 6). Under the Special Employment Doctrine, courts consider a person an employee of two different employers at the same time. Shelton v. Steelcase, Inc., 677 S.E.2d 485, 491 (N.C. Ct. App. 2009). This doctrine affects an employee's rights under the Workers' Compensation Act. When the Special Employment Doctrine Applies,

> the joint liability under the [Workers' Compensation Act] of the company that directly employs the employee (the general employer) and a second company (the special employer) provides the plaintiff-employee with two separate potential sources of workers' compensation benefits. However, under the special employment doctrine, the employee's receipt of workers' compensation benefits from either employer bars the employee from proceeding at common law against either of the employers.

Freeman v. SONA BLW Precision Forge, Inc., 784 S.E.2d 237, at *3 (N.C. Ct. App. 2016) (unpublished decision). Accordingly, Defendant maintains that Plaintiff qualifies as a special employee and is thus bared from recovering against Defendant when he already received a settlement from CDS. (Doc. No. 7 at 12–13).

Courts employ a three-pronged test to determine if the Special Employment Doctrine applies to a specific employee. A special employer becomes liable for workmen's compensation when a general employer lends an employee and if:

---

[1] The Court notes that the Magistrate Judge improperly employed the standard for 12(b)(6) rather than 12(b)(1). This error, however, does not affect the outcome of the M&R's ultimate conclusion.

> (a) the employee has made a contract for hire, express or implied, with the special employer;
>
> (b) the work being done is essentially that of the special employer; and
>
> (c) the special employer has a right to control the details of the work.
>
> When all three of the conditions are satisfied in relation to both employers, both employers are liable for workmen's compensation.

Brown v. Friday Servs., Inc., 460 S.E.2d 356, 360 (N.C. Ct. App. 1995).

In this case, Plaintiff concedes that the latter two factors of the Special Employment Doctrine are fulfilled. The work Plaintiff performed "was essentially that of FXI," and "FXI had the right to control the details of that work." (Doc. No. 12 at 2 n.1). Furthermore, no party contends that Plaintiff entered into an express contract with Defendant. This case therefore turns on whether Plaintiff entered into an implied contract with Defendant pursuant to the first prong of the Special Employment Doctrine.

In general, "[i]f [an] employee accepts an assignment to work for [an] outside employer, this Court will often find an implied contract between the employee and the outside employer." Bullard v. Peak Steel, L.L.C., 781 S.E.2d 532, at *5 (N.C. Ct. App. 2016) (unpublished decision). However, an important exception applies to this rule. No implied employer-employee contract forms "when there is contrary language in the contract between the agency and the employer." Id. Here, Plaintiff contends that this exception applies because the agreement between FXI and CDS stated that FXI "shall not directly or indirectly hire any Contract Employee provided by Contractor until Contract Employee has completed a minimum of ninety (90) days of service with Contractor at Company location." (Doc. No. 12 at 3). Additionally, Plaintiff points to his contract with CDS which stated that he, as CDS's employee, would not "directly seek employment with any Client companies or employment agencies who service a CDS client that [Plaintiff] was assigned to while

employed through CDS." (Id. at 2–3). The language of these two contracts, Plaintiff argues, expressly precludes a finding that he was an employee of Defendant under the Special Employment Doctrine. (Id. at 6–7).

In his M&R, the Magistrate Judge agreed with Defendant and found that there was an implied contract between Plaintiff and Defendant, thus fulfilling the Special Employment Doctrine and baring Plaintiff's recovery. (Doc. No. 14). Specifically, the Magistrate Judge cited Freeman v. SONA BLW Precision Forge, Inc. to find that implied contracts "exist between the employee and the special employer where the employee 'accept[s] the assignment from [the temporary employment agency] and perform[s] the work at the direction and under the supervision of [the special employer].'" (Id. at 5) (citing Freeman, 784 S.E.2d 237, at *3). The Magistrate Judge also cited Freeman for the proposition that "[i]mplied contracts between employees and special employers also have been 'demonstrated by an express contract between the temporary employment agency and the special employer under which the special employer paid the temporary employment agency which in turn paid the employee for his work.'" (Id.). The Magistrate Judge applied Freeman to find that an implied contract exists between Plaintiff and Defendant because: (1) Plaintiff accepted CDS's assignment to work under Defendant's supervision; and (2) the contract between Defendant and CDS provided that Defendant would pay CDS for Plaintiff's service and CDS would in turn pay Plaintiff. (Id.).

The Magistrate Judge further held that Plaintiff's reliance on the selected contractual language between himself and CDS and CDS and FXI was misplaced because the North Carolina Court of Appeals rejected identical arguments in both Freeman and Bullard v. Peak Steel, L.L.C. (Id.). "Neither contract expressly retains Plaintiff as solely an employee of CDS," the Magistrate Judge concluded. "Rather, the contracts protect CDS' investment in its employees [by] merely

contain[ing] conditions precedent to Defendant becoming Plaintiff's general employer. They do not prevent Defendant from being Plaintiff's special employer for workers' compensation purposes." (Id. at 5–6).

Plaintiff submits two objections to the M&R. First, Plaintiff argues that the Magistrate Judge erred in concluding that the contractual language in the CDS/Plaintiff and CDS/Defendant agreements do not expressly prevent an implied contract from forming between Plaintiff and Defendant. (Doc. No. 15 at 2–7). Second, Plaintiff states that the Magistrate Judge misstated the law by finding that "'generally' a temporary employee is an employee of the general employer and of the company where he was assigned to work."

The Court will assess each of Plaintiff's objections in turn, starting with Plaintiff's second objection since it is easiest to dispense with. Plaintiff is incorrect that the Magistrate Judge misstated the law. In fact, in the very case that Plaintiff attached to its Response to Defendant's Motion to Dismiss, Bullard v. Peak Steel, L.L.C., the North Carolina Court of Appeal held that "[i]f [an] employee accepts an assignment to work for [an] outside employer, this Court *will often* find an implied contract between the employee and the outside employer." 781 S.E.2d at *5 (emphasis added). Furthermore, the Magistrate Judge did not state that the Special Employment Doctrine is the default standard. The M&R clearly lays out the needed elements a party must establish to find this special relationship. In its summation of the law, the Magistrate Judge merely pointed out that the three elements are often fulfilled in situations such as the one before the Court.

As to Plaintiff's first objection, the Court also agrees with the M&R's finding that an implied contract existed between Plaintiff and Defendant, thus fulfilling the first prong of the Special Employment Doctrine and baring Plaintiff's claim. Plaintiff's emphasis on contractual language misconstrues the effects those contracts had on Plaintiff's relationship with Defendant.

The contracts did not expressly label Plaintiff as CDS's employee for all purposes including liability under the Workmen's' Compensation Act. See Gregory v. Pearson, 736 S.E.2d 577, 586 (2012); Shelton v. Steelcase, Inc., 677 S.E.2d 485, 492 (2009). Rather, the contracts focused on FXI's status as Plaintiff's *general* employer. Under these agreements, CDS would remain Plaintiffs general employer at least until Plaintiff worked 90 days under Defendant. This language does not preclude FXI's status as Plaintiff's special employer while Plaintiff remained a general employee of CDS. Simply put, Plaintiff cites contractual provisions that pertain to Plaintiff's complete transfer as a general employee under CDS to a general employee under FXI.

As the Magistrate Judge pointed out, this is exactly the situation which the North Carolina Court of Appeals addressed in Freeman. There, the plaintiff staffed by a temporary staffing service was eligible for a permanent position with a manufacturing company after working 400 hours under that assignment. Freeman, 784 S.E.2d at *1. Despite this provision, the court found that the contract in question "contains no express language stating that temporary employees supplied by [the staffing agency] were not employees of [the manufacturer] nor any language stating that temporary workers were employees of [the staffing agency] but not of the companies to which they were assigned." Id. at *4.

IV. **CONCLUSION**

**IT IS, THEREFORE, ORDERED** that:

1. The Magistrate Judge's M&R, (Doc. No. 14), is **ADOPTED**;

2. FedEx Freight, Inc.'s Motion to Dismiss, (Doc. No. 6), is **GRANTED**; and

3. The Clerk of Court is directed to close this case.

Signed: February 22, 2018

Robert J. Conrad, Jr.
United States District Judge